IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MARILYN MIGLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07 C 6863 |
| | ) | |
| JAMES JOSEPH "TED" MELLON, | ) | Honorable Virginia M. Kendall |
| | ) | |
| Defendant. | ) | Magistrate Judge Valdez |

**MARILYN MIGLIN'S MOTION TO STRIKE
DEFENDANT'S AFFIRMATIVE DEFENSES PURSUANT TO RULE 12(f)**

Plaintiff Marilyn Miglin ("Miglin" or "Plaintiff"), moves to strike defendant James Joseph "Ted" Mellon's ("Mellon" or "Defendant") affirmative defenses pursuant to Fed. R. Civ. P. 12(f).  In support of her motion, Miglin states as follows:

### *I.  Introduction*

This case is about an individual who plaintiff alleges orchestrated a scheme to defraud her of millions of dollars.  Initially, Mellon targeted Miglin to invest in a corporation known Advanced Medical Products Inc ("AMP"), which owned the patent on a needle that was represented to be a safe and cost effective method for the treatment of spider veins.  To induce Miglin to invest in AMP, Mellon represented, among other things, that he was a friend of Miglin's deceased husband, that he (Mellon) was a member of the Mellon banking family and that he (Mellon) was also investing in AMP, all of which, turned out to be false.

Eventually, Miglin discovered that not only had Mellon not invested in AMP, but, he obtained Miglin's investment proceeds, or, a portion thereof, and used such proceeds for his own benefit and not to promote sales of the needle.   However, Mellon's scheme to defraud Miglin

did not stop there; rather, Miglin is informed and believes that Mellon is participating in a larger conspiracy to further defraud Miglin and convert her assets for his own use and benefit.

On information and belief, Mellon and his co-conspirators intend to engage in a malicious campaign against Miglin to convert any and all assets Miglin may own to their own use and benefit by making false claims and forcing Miglin to choose between paying exorbitant settlements to "buy her peace" or, she pays great sums in legal fees to defend herself against Mellon's false claims. Sadly, it appears that Miglin is only the most recent victim of a vast scheme orchestrated by Mellon to lure people into parting with millions of dollars, only to convert those millions for his own use and benefit, leaving a trail of bankruptcies and defrauded individuals in his wake.

On August 31, 2007, Miglin filed suit against Mellon in the Circuit Court of Cook County, Illinois, alleging fraud. Thereafter, Mellon removed the case to the Northern District of Illinois pursuant to 28 U.S.C. §1441(b). On January 4, 2008, Mellon filed a document styled "Answer," which contains fourteen purported affirmative defenses. However, a cursory review of Mellon's "affirmative defenses" reveals that they should be stricken for at least two principal reasons. First, all but four of Mellon's affirmative defenses are inappropriately pleaded as affirmative defenses and therefore, they do not satisfy the requirements of Fed. R. Civ. P. 12(f); Second, none of the remaining affirmative defenses contain facts that allow Miglin to frame a reply. As a result, they should be stricken for their failure to comply with Fed. R. Civ. P. 8.

## II. *Statement of Facts*

Miglin met Mellon in 1999. To gain access to her, Mellon falsely represented that he was an old friend of Miglin's late husband Lee Miglin (Complaint [cited as Cmplt.], p. 1, ¶4).

He also falsely represented that he was related to the Pittsburgh Mellon family that made its fortunes in banking, oil, and aluminum (Cmplt., p. 1, ¶4).

Soon after befriending her, Mellon gained an acute understanding of Miglin's sensitivities. Mindful of Miglin's status as a Chicago cosmetics businesswomen, Mellon informed Miglin about a revolutionary needle that was represented to be a safe and cost effective method of treating spider veins (*Id*). After a series of encounters, Mellon induced – through his false representations – Miglin to invest $2.5 million in Advanced Medical Products Inc ("AMP"), which was the corporation that had purchased the patent from its inventor, Dr. Dennis P. Gordan (*Id*). Mellon represented that he invested the same amount in AMP, which, on information and belief, is also not true (Id., p. 2, ¶8).

Eventually, Miglin discovered that not only had Mellon not invested in AMP, but he obtained Miglin's investment proceeds, or a portion thereof, and used such proceeds for his own benefit and not to promote sales of the needle (*Id*). Had she known that Mellon had no intention of investing in AMP, and was not the person that he purported to be, Miglin would not have invested in AMP (*Id*., pp. 2-3, ¶¶9, 10). Mellon's scheme to defraud Miglin did not stop with her initial investment in AMP; rather, on information and belief, Mellon is now part of a larger conspiracy with others to defraud Miglin by planning to initiate further litigation against Miglin related to Miglin's former interest in AMP (*Id*., p. 3, ¶15). On information and belief, Mellon also intends to make a claim against Miglin for an interest in real estate in Chicago but has not filed any such counterclaim with his answer because he intends to make a motion to transfer venue to the United States District Court in Las Vegas, Nevada and, if successful, will then seek

to have such action transferred to the Nevada state court.[1]

Mellon has filed an answer to Miglin's complaint and, in his answer, Mellon asserts fourteen affirmative defenses. Mellon alleges that: (I) Miglin failed to state a cause of action; (II) any conduct on the part of Mellon was in reliance upon Miglin's actions; (III) Miglin is guilty of laches, and therefore, is barred from maintaining this action; (IV) Miglin waived her right to pursue any claims against Mellon; (V) any damage sustained by Miglin was not the result of Mellon's conduct, but the conduct of "unknown third persons;" (VI) Miglin's damages were the result of "intervening, superseding conduct of others;" (VII) Miglin's damages were the result of her own carelessness and negligence; (VIII) Miglin did not deal with Mellon in good-faith; (IX) Miglin failed to mitigate her damages; (X) Miglin's claims are "uncertain, ambiguous, and unintelligible;" (XI) Miglin's claims against Mellon are barred, in whole or in part, by waiver, estoppel, and/or laches; (XII) punitive damages cannot be awarded under the facts alleged in the complaint; (XIII) Miglin's prayer for punitive damages is in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendment of the United States Constitution; and (XIV) with respect to Miglin's prayer for punitive damages, Mellon incorporates any and all standards or limitations regarding the determination or enforceability of punitive damage awards.

### III. *Argument*

Under Rule 12(f), a court may strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." *Ortho-Tain, Inc. v. Rocky Mountain*

---

[1] Attached hereto as Exhibit A is the joint status filed in this matter in which Mellon states that he intends to make a motion to transfer venue and an order has been entered requiring such motion to be filed by February 14, 2008. On information and belief, Mellon is forum shopping and has delayed filing any counterclaim against Miglin to avoid any negative impact such counterclaim may have on the arguments he intends to make in his motion to transfer venue, since, on information and belief, one of Mellon's threatened claims involves real estate located in the City of Chicago, which claim is wholly unrelated to AMP.

*Orthodontics, Inc.*, 2007 WL 1238917, *1 (N.D. Ill. 2007) (internal citations omitted). A motion to strike serves the "useful purpose [of] eliminating insufficient defenses and saving the time and expense that otherwise would be spent litigating issues that will not affect the outcome of the case." *Id*. An affirmative defense should not be stricken if it is sufficient as a matter of law or if it presents questions of law or fact. *Id*. Courts apply a three-part test in examining the sufficiency of affirmative defenses under Rule 12(f): (1) whether the matter is properly pled as an affirmative defense; (2) whether the affirmative defense complies with Federal Rules of Civil Procedure 8 and 9; and (3) whether the affirmative defense can withstand a Rule 12(b)(6) attack. *Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc.*, 213 F.R.D. 307, 308 (N.D. Ill. 2003). An affirmative defenses that fails to meet any of these standards must be stricken.

In this case, Mellon's "affirmative defenses" should be stricken for at least two principal reasons: First, all but four of Mellon's affirmative defenses are inappropriately pleaded as affirmative defenses and therefore, they do not satisfy the requirements of Fed. R. Civ. P. 12(f); Second, none of the remaining affirmative defenses contain facts that allow Miglin to frame a reply. As a result, they should be stricken for their failure to comply with Fed. R. Civ. P. 8. These arguments are explained below.

> A. *Mellon's First, Second, Fifth, Sixth, Seventh, Eighth, Tenth, Twelfth, Thirteenth, and Fourteenth Affirmative Defenses Are Inappropriately Pleaded As Affirmative Defenses and Therefore, Should be Stricken and Dismissed*

Here, Mellon's first, second, fifth sixth, seventh, eighth, tenth, twelfth, thirteenth, and fourteenth affirmative defenses should be stricken because they are inappropriately pleaded as affirmative defenses.

A matter that is not appropriately pled as an affirmative defense must be stricken to make

the pleadings more precise. *Franklin Capital Corp. v. Baker & Taylor Entertainment, Inc.*, 2000 WL 1222043 at *2 (N.D. Ill. 2000). A matter is not properly pled as an affirmative defense where the allegation is not "an admission of the facts alleged in the complaint coupled with an assertion that there is some other reason as to why defendant is not liable." *Cohn v. Taco Bell Corp.*, 1995 WL 247996 at *3 (N.D. Ill. 1995).

### 1.    *First Affirmative Defense*

In his first affirmative defense, Mellon alleges that Miglin's claims fail to state a cause of action. This is clearly not an affirmative defense, but a recitation of the substance of Fed. R. Civ. P. 12(b)(6). If Mellon wishes to challenge the legal sufficiency of the complaint, he should file the appropriate motion rather than assert this so-called affirmative defense. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (affirmative defenses based upon Fed. R. Civ. P. 12(b) are without a doubt legally insufficient).

### 2.    *Second Affirmative Defense*

In his second affirmative defense, Mellon denies any responsibility for the conduct complained of, while at the same time, he asserts that his conduct was in reliance on Miglin's actions, and therefore, she should be estopped from asserting her claims against Mellon. However, just as he does in almost all of his so-called affirmative defenses, Mellon attempts to deny the allegations of the complaint, while at the same time alleging that he has an affirmative defense to Miglin's cause of action for fraud. Mellon cannot have it both ways. He cannot deny Miglin's allegations, while at the same time he asserts a defense to those allegations. *Cohn, supra*, 1995 WL 247996 at *3. Also, even if Mellon's so-called affirmative defense of "estoppel" were properly pleaded – which it is not – it completely lacks facts that serve to place

Miglin on notice of the defense asserted. As a result, it is deficient under the law. Mellon's second affirmative defense is rife with confusion, but one thing remains clear – it is inappropriately pleaded as an affirmative defense and therefore, it should be stricken and dismissed.

### 3. *Fifth and Sixth Affirmative Defenses*

In his fifth and sixth affirmative defenses, Mellon alleges that Miglin's damages were the result of actions taken by unknown third parties. This is not a proper subject for an affirmative defense and is in substance, a denial of the causation element of plaintiff's fraud claim. Consequently, Mellon's fifth and sixth affirmative defenses should be stricken. See *Bobbit v. Victorian House, Inc.*, 532 F. Supp 734, 737 (N.D. Ill. 1982).

### 4. *Seventh and Eighth Affirmative Defenses*

In his seventh and eighth affirmative defenses, Mellon alleges that Miglin's damages were the result of her own carelessness and negligence (seventh affirmative defense), and because she failed to deal with Mellon in good-faith (eighth affirmative defense). Once again, Mellon is simply disputing that he caused Miglin's damages. Under federal law, assertions such as these cannot be asserted as affirmative defenses. *Cohn, supra*, 1995 WL 247996 at *3.

### 5. *Tenth Affirmative Defense*

In his tenth affirmative defense, Mellon alleges that "[p]laintiff's claims and/or causes of action, in whole or in part, are uncertain, ambiguous and unintelligible." This statement is more in the nature of a denial and not an affirmative defense. Consequently, Mellon's tenth affirmative defense should be stricken and dismissed.

### 6. *Twelfth, Thirteenth, and Fourteenth Affirmative Defenses*

Mellon's twelfth, thirteenth, and fourteenth affirmative defenses concern Miglin's prayer for punitive damages. None of them address or admit the facts in the complaint, and none of them point to an outside matter that somehow defeats Miglin's claim.

In his twelfth affirmative defense, Mellon simply alleges, without providing citation to any legal authority, that punitive damages cannot be awarded under the facts as alleged. This statement is nothing more than a conclusion of law and cannot be considered an affirmative defense to the complaint. Accordingly, Mellon's twelfth affirmative defense should be stricken.

In his thirteenth affirmative defense, Mellon alleges that Miglin's claim for punitive damages is in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. However, Mellon does not provide any basis for such an assertion, nor any facts in support of this defense. Mellon's attack on Miglin's prayer for punitive damages simply cannot be construed as an affirmative defense to fraud. Therefore, Mellon's thirteenth affirmative defense should also be stricken.

In his fourteenth affirmative defense, Mellon alleges attempts to incorporate by reference "any and all standards or limitations regarding the determination and/or enforceability of punitive damage awards which arise in the decisions of *BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), and *State Farm Mutual Insurance Co. v. Campbell*, 538 U.S. 408 (2003)." However, those cases do not help Mellon because they are inapplicable to the facts of this case.

*BMW* had nothing to do with the assertion of an affirmative defense in response to a complaint alleging fraud. Instead, *BMW* involved an automobile purchaser who brought an

action against the foreign automobile manufacturer, the American distributor, and the dealer based on the distributor's failure to disclose that the automobile had been repainted after being damaged prior to delivery.  The Supreme Court held that: (1) lawful conduct by the distributor outside of Alabama could not be considered by the Alabama court in making an award of punitive damages, and (2) the award of punitive damages in the amount of $2,000,000 was grossly excessive in light of the low level of reprehensibility of conduct and the 500 to 1 ratio between the punitive damage award and the actual harm to the purchaser.  BMW simply dealt with the appropriateness of a punitive damage award – not an affirmative defense in response to a fraud claim.

Likewise, *Cooper Industries* has no bearing on this case.  In *Cooper Industries*, the manufacturer of a multi-function hand tool sued its competitor for, inter alia, false advertising.  The jury awarded $50,000 in compensatory damages and $4.5 million in punitive damages.  The Supreme Court held that the Court of Appeals should apply a de novo standard when reviewing a district court's determination of the constitutionality of a punitive damage award.   Again, there was no issue as to whether an affirmative defense was properly asserted in response to a fraud claim.

Finally, *State Farm* does not help Mellon.  In that case, insureds brought an action against an automobile liability insurer for bad-faith failure to settle within the policy limits, fraud, and intentional infliction of emotional distress.  The Third District Court sitting in Salt Lake County entered judgment on the jury verdict in favor of the insureds.  After an appeal and cross-appeal were made, the Supreme Court of Utah reinstated the jury's punitive damage award.  The Supreme Court reversed and held that the award of $145 million in punitive damages on a

$1 million compensatory judgment violated due process. Nowhere in *State Farm* does it speak to the sufficiency of an affirmative defense.

The allegations in Mellon's twelfth, thirteenth, and fourteenth affirmative defenses are inappropriately pleaded as affirmative defenses. None of them address or admit the facts in the complaint, and none of them point to an outside matter that somehow defeats Miglin's claim. Under federal law, the foregoing affirmative defenses should be stricken and dismissed.

> B.    *Mellon's Third, Fourth, Ninth, and Eleventh Affirmative Defenses Do Not Comply with Rule 8, and Therefore, They Should Be Stricken and Dismissed*

Mellon's third, fourth, ninth, and eleventh affirmative defenses do not satisfy the pleading requirements of Rule 8. Therefore, those affirmative defenses should be stricken.

An affirmative defense that fails to satisfy the requirements of Rule 8 must be stricken. *Ortho-Tain, Inc., supra*, 2007 WL 1238917 at *1.

In his third affirmative defense, Mellon alleges that Miglin is "guilty of laches as should in equity bar the plaintiff from maintaining this action." In his fourth affirmative defense, Mellon alleges that Miglin "waived any rights she may have had under the circumstances alleged." In his ninth affirmative defense, Mellon alleges that Miglin failed to mitigate her damages. And finally, in his eleventh affirmative defense, Mellon decides to reallege some of his earlier affirmative defenses by stating that "[p]laintiff's claims and/or causes of action are barred, in whole or in part, by waiver, estoppel[2], and/or laches."

---

[2] While not at issue at this time, estoppel defenses, depending on their substance, may be subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Bobbit, supra,* 532 F. Supp. at 737.

While Miglin concedes that these matters may – under appropriate facts – constitute affirmative defenses, here, there are no facts pleaded that allow Miglin to formulate a response.

### 1.     *Third Affirmative Defense*

Mellon alleges that Miglin is guilty of laches, but provides no facts to support his assertion. Laches is an equitable principle that bars relief to a party whose unreasonable delay in bringing an action for relief prejudices the rights of the other party. *Marsaw v. Richards*, 368 Ill.App.3d 418, 431-32, 857 N.E.2d 794, 804 (1st Dist. 2006). The party seeking to prove laches must show more than a mere passage of time; they must show an unreasonable delay in bringing the action that caused them material prejudice. *Marsaw, supra*, 368 Ill.App.3d at 431-32, 857 N.E.2d at 804.

In this case, Mellon does not allege an unreasonable delay in bringing this action. Nor does he allege facts showing that he suffered any prejudice. Instead, Mellon – in conclusory fashion – asserts that Miglin is guilty of laches. Rule 8 requires more.

### 2.     *Fourth Affirmative Defense*

In his fourth affirmative defenses, Mellon simply alleges that Miglin waived her rights to bring this action. However, once again, Mellon failed to provide any facts to support his conclusion of law.

### 3.     *Ninth Affirmative Defense*

Likewise, in his ninth affirmative defense, Mellon does not provide any facts showing how Miglin failed to mitigate her damages. He simply alleges that she failed to do so. But Mellon's one sentence assertion cannot be said to provide Miglin with adequate notice of the

relevant elements of his purported defense. *Bobbit, supra*, 532 F.Supp at 737.

### 4. *Eleventh Affirmative Defense*

Mellon's eleventh affirmative defense is redundant and also deficient. In it, Mellon alleges – as he did in his third and fourth affirmative defenses – that Miglin is guilty of laches, and that she waived her right to bring this action. In addition, however, Mellon alleges that Miglin's claims are barred by the doctrine of estoppel. First, as shown above, Mellon's third and fourth affirmative defenses are inadequate under Rule 8 and should be stricken as a result. Second, depending upon their substance, estoppel defenses may be subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Bobbit, supra,* 532 F. Supp. at 737. In this case, however, Mellon's conclusory estoppel defense does not even comply with Rule 8 – much less the heightened pleading requirements set forth in Rule 9(b). Indeed, there are simply no facts that can be gleaned from any of Mellon's affirmative defenses.

Under federal law, when pleading an affirmative defense, a defendant must provide the plaintiff with adequate notice of the relevant elements of the defense. *Bobbit, supra*, 532 F. Supp. at 737. Mellon has altogether failed to do so and most importantly, has failed to meet the requirements of Rule 8. Consequently, Mellon's third, fourth, ninth, and eleventh affirmative defenses should be stricken and dismissed.

### C. *Mellon's Reservation of Rights Should Also Be Stricken and Dismissed*

While it is not labeled as an affirmative defense, at page 6 of his answer, Mellon appears to allege a fifteenth affirmative defense styled "Reservation of Rights." The reservation of right is not an affirmative defense and should be stricken and dismissed.

In the reservation of rights, Mellon states that "[d]efendant ... may have additional defenses or claims available to it of which it is not now aware.  Defendant reserves the right to assert additional defenses or cross-claims, counterclaims, or third-party claims as may be revealed to be appropriate through discovery, or otherwise in the course of this litigation."  This statement is nothing more than an arrogation by Mellon of a right to amend his pleading, which – to the extent the request is made – is a matter within the court's discretion pursuant to Fed. R. Civ. P. 15(a).  This also supports Miglin's belief that Mellon is intent on forum shopping and intends to raise claims against Miglin that, if raised now, would otherwise keep venue in this court.  In any event, because the reservation of rights is clearly not an affirmative defense, it should be stricken and dismissed.

### IV.  *Conclusion*

For the foregoing reasons, Miglin requests the court strike and dismiss Mellon's affirmative defenses.

**MARILYN MIGLIN**
By: /s/ Rafey S. Balabanian
One of Ms. Miglin's Attorneys

Cornelius P. Brown (ARDC no. 0312355)
Rafey S. Balabanian (ARDC no. 6285687)
COHON RAIZES & REGAL LLP
208 South LaSalle Street, Suite 1860
Chicago, Illinois 60604
312/726-2252 (office)