**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARILYN MIGLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 6863 |
| v. | ) | |
| | ) | Judge Kendall |
| JAMES JOSEPH "TED" MELLON, | ) | |
| | ) | Magistrate Judge Valdez |
| Defendant. | ) | |

**REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE**

COMES NOW Defendant, James Joseph "Ted" Mellon ("Mellon"), by and through his

attorneys, David R. Creagh David J. Richards of HINSHAW & CULBERTSON LLP, and

submits his Reply to Miglin's Response to Mellon's Motion to Transfer Venue of this matter to

the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1404(a).  In

support of his Reply, Mellon states as follows:

**FACTS**

Despite the tactical meanderings of counsel, the facts that make it clear that this matter

should be transferred to the United States District Court for the District of Nevada can easily be

summarized.

This action arose from the invention of a medical device developed to treat "spider

veins," an invention cleverly named the Arachnophlebectomy Needle (hereinafter the "APN").

The APN was invented prior to calendar year 2000 by Dennis P. Gordon, MD ("Gordon"), an

orthopedic surgeon who did reside, and continues to reside, in Clark County, Nevada.  Gordon

and his friend/attorney, Jason Landess, Esq. ("Landess") entered into a 1999 agreement to

develop the APN using a Nevada corporation named "Advanced Medical Products, Inc.

("AMP").

In 2000, Landess met Mellon, who expressed an interest in the development and marketing of the APN. Mellon introduced Landess to Marilyn Miglin ("Marilyn"), the multi-million dollar owner of an international cosmetics firm headquartered in Chicago, Illinois. Marilyn was interested in the APN for the potential profit in marketing the device worldwide. Discussions regarding the APN between Marilyn, Mellon, Landess, and Jon Crain ("Crain")[1] in Chicago, Las Vegas, and elsewhere. On July 19, 2000, Marilyn traveled to Las Vegas to have the spider vein treatment, using the APN, performed by Linda Woodson, MD, a physician who resided and continues to reside in Clark County, Nevada. Discussions regarding the product involving Marilyn, Landess, Mellon, and Crain took place in Las Vegas at or near the time of the spider vein treatment on Marilyn on July 19, 2000.

Following the successful treatment performed on Marilyn using the APN, Marilyn and Mellon agreed to pay $2.5 million each to Landess and Crain for shares of stock in AMP. The written agreement memorializing Marilyn's and Mellon's acquisition of stock in AMP from Landess and Crain was negotiated and painstakingly prepared by independent counsel representing Marilyn, Mellon, and Landess. That agreement provides that disputes regarding the relationship of the parties thereto will be governed by Nevada law and any action concerning the enforcement of the agreement must be commenced in Clark County, Nevada. (See Exhibit "A").

Marilyn made a separate agreement to pay Landess the $2.5 million in installments that were made beginning in August, 2000 with a final payment of $1.3 million in April, 2001. Nothing in the terms of the August 10, 2000 agreement prohibited Marilyn from making a separate agreement to make installment payments rather than a lump sum payment of $2.5 million to Landess and Crain for the shares of stock in AMP.

Mellon also made a separate arrangement or agreement with Landess and Crain whereby

2

his $2.5 million purchase price for stock was satisfied by transferring shares of stock in another corporation, Mellon International Investments. Nothing in the August 10, 2000 agreement prohibited Mellon from agreeing with Landess that the Mellon International Investment stock had a value of $2.5 million and was sufficient to acquire Mellon's stock ownership in AMP reflected in the original agreement.

In her September, 2007 Complaint herein against Mellon, Marilyn alleges that she was: 1) unaware that Mellon was not contributing $2.5 million in cash in exchange for his AMP stock, and 2) unaware that Mellon and Landess actually shared the benefit of the $2.5 million paid to Landess by Marilyn for her AMP stock. Marilyn even submits an Affidavit in support of her Opposition alleging that she was unaware of these two (2) facts, but in April, 2001, she acknowledged in writing that she knew Mellon had acquired his stock in exchange for stock in Mellon International Investments and that Mellon and Landess had benefitted from the $2.5 million actually paid by Marilyn for her stock. (See Exhibit "B"). Her allegations regarding lack of knowledge are plainly false.

During the latter months of 2001, Marilyn, Landess, Mellon, and the other directors and officers of AMP had disagreements regarding the direction of the development and marketing efforts of the APN. These disagreements were discussed in meetings that took place in Chicago, Las Vegas, and elsewhere. The tenor and nature of the disagreements are carefully and persuasively set out in correspondence from Landess to Marilyn dated December 10, 2001. (See Exhibit "C"). The deceit and uncooperative conduct of Marilyn during calendar year 2001 is colorfully depicted in Landess' correspondence. Notably, another friend and former client of Landess, Larry Siggelkow ("Siggelkow"), a resident of Clark County, Nevada, had by Fall, 2001 become a shareholder in AMP and Marilyn was upset that she had not financially benefitted

3

from Siggelkow's purchase of stock. Landess' letter also describes how Marilyn sought to direct all efforts to develop the APN and veto the efforts of other shareholders, but refused to contribute any additional sums towards the capital development of the product.

The disagreements and arguments culminated in a January, 2002 meeting in Las Vegas at The Orleans Hotel and Casino. Present at that meeting were Marilyn, Marilyn's son, Duke Miglin, Landess, Crain, and Cameron Stuart.[2] Cameron Stuart is and was at all times a resident of Clark County, Nevada. Also present at the January, 2002 meeting at The Orleans Hotel in Las Vegas was Gordon who had become a member of the board of directors of AMP in October, 2001. Once again, Gordon is, and was at all times, a resident of Clark County, Nevada. Mellon attended The Orleans Hotel meeting in Las Vegas by telephone, being unable to be present as a result of other business commitments. In order to end the disagreement and discord hampering development of the APN, the result of The Orleans Hotel in Las Vegas meeting was that the corporation agreed to re-purchase the stock of Landess and the stock held by Mellon for the sum of $3.5 million each. In a heated exchange at that meeting, Marilyn agreed verbally that she would use her personal financial resources to "back up" the generous buy offers made to Landess and Mellon. Once again, Marilyn, Landess, and Mellon were represented by independent counsel who negotiated and painstakingly prepared written agreements memorializing the Stock Purchase Agreement and set forth that "this Agreement shall be governed, construed and enforced in accordance with the laws of the State of Nevada." (See Exhibit "D," ¶ 13).

Thereafter, Marilyn refused to perform the Stock Purchase Agreement entered into with Landess and Mellon. Marilyn engaged in a course of conduct to exclude Landess and Mellon from the AMP business and interfered with AMP's performance of the agreements to acquire the stock interests of Landess and Mellon she had verbally guaranteed. Marilyn went so far as to

6306152v1 883553

engineer a breaking, entering, and burglary of Landess' Las Vegas law office in March, 2002. The break in and burglary was engineered and perpetrated by Marilyn, Gordon, and Crain and was perpetrated to unlawfully acquire the existing inventory of APN needles, the books and corporate records of AMP, and other documents from Landess' law office.

The fraud engaged in by Marilyn designed to separate Landess and Mellon from AMP without compensation, and the burglary of Landess' law office resulted in no less than four (4) lawsuits that were consolidated for trial.

After trial in early 2007, a **COMPENSATORY** verdict was entered against Marilyn and in favor of Landess and Siggelkow (on behalf of all AMP shareholders including Mellon) in the amount of $16.5 million.  Despite Marilyn's contentions otherwise, the compensatory award was entered against her and she fled Las Vegas before trial of the punitive damages could commence. Settlement negotiations undertaken after the jury's verdict resulted in a significant payment made by Marilyn to Landess and Siggelkow and it is this amount of money that Marilyn now seeks to recover from Mellon saying that he made misrepresentations to her that resulted in her acquisition of AMP stock in the first place. Mellon wholeheartedly disagrees with Marilyn's contentions and his defense is based upon demonstrable and admissible evidence and testimony, almost all of which is located in Clark County, Nevada, the principal place of business and headquarters for AMP during the entire period of its existence.

Marilyn's Opposition to the Motion to Change Venue to the United States District Court for the District of Nevada is, at times, unsupported and at other times, disingenuous.  *Every* non-party witness of consequence to the determination of Marilyn's claims regarding stock acquisition and ownership, except Marilyn's son, Duke Miglin, reside in Clark County, Nevada and are outside the subpoena power of the Northern District of Illinois. The most critical non-

5

party witness concerning Marilyn's claims and Mellon's defense is Landess, who was present at nearly all meetings and discussions regarding acquisition of the stock and the conduct of Marilyn thereafter. Landess has already indicated that he will not voluntarily appear in the Northern District of Illinois, and it is the **_quality and importance_** of his testimony in regard to the defense of Mellon that makes his attendance imperative.

Marilyn, throughout her papers, wants to contend that this is a "fraud" case involving Mellon's misrepresentations designed to secure her investment in AMP. As a result, Marilyn seeks to recover the settlement funds she paid to Landess and Siggelkow after the jury returned its **_COMPENSATORY_** verdict in the amount of $16.5 million. Marilyn takes the unbelievable position that she is seeking damages for Mellon's alleged misrepresentations, but those damages are actually the result of a trial in Clark County, Nevada wherein a jury found that Marilyn had defrauded, breached covenants of good faith and fair dealing, and intentionally inflicted emotional distress on Landess, Siggelkow and the other shareholders of AMP, including Mellon. Marilyn cannot have her cake and eat it too.

The results and findings of the civil jury trial in Las Vegas, Clark County, Nevada wherein the jury made significant findings against Marilyn and assessed **_COMPENSATORY_** damages against Marilyn in the amount of $16.5 million is pertinent to these proceedings. The witnesses whose testimony will be critical to Marilyn's acquisition of stock, conversations and meetings that took place during the acquisition and thereafter, and her activities after the acquisition are **_all_** residents of Clark County, Nevada. Marilyn's statements that there are individuals in Illinois and California, without any description of their proposed testimony, is simply an effort to obfuscate the facts.

The case at bar meets all of the criteria previously set forth by this Court in other cases

wherein a change of venue was granted.  Most, if not all, of the non-party witnesses and evidence

is located in Clark County, Nevada and are outside the subpoena jurisdiction of the United States

District Court for the Northern District of Illinois.  It is respectfully submitted that Marilyn's

efforts to obfuscate the facts by submitting over 100 pages of documents, almost all of which are

irrelevant to the transfer of venue question, should be rebuffed and this motion must be granted.

### A FORUM SELECTION CLAUSE CONTAINED IN AN ENFORCEABLE CONTRACT IS PRESUMED VALID AND WILL GENERALLY BE ENFORCED

Marilyn takes the position that the forum selection clause is somehow unenforceable

because Mellon made an alternate arrangement with Landess regarding payment to Landess for

Mellon's AMP shares of stock.  Marilyn contends that because Mellon rescinded his agreement

to pay $2.5 million for shares of AMP stock, and instead agreed with Landess to contribute

shares of stock in another corporation, that fact somehow relieves Marilyn of her agreement that

"this Agreement and the legal relations between the parties hereto shall be governed by and

construed in accordance with the internal laws of the State of Nevada applicable to contracts

made and to be performed wholly in such state.  Any legal action or other proceeding for the

enforcement of this Agreement shall be brought only in the County of Clark, State of Nevada."

(See Exhibit "A," ¶ 14).  Marilyn's counsel's familiarity with Nevada law and agreement that

Nevada law governs these proceedings is not affected by Mellon's separate agreement with

Landess.  In fact, one could assert that Marilyn had her own *separate agreement* with Landess

whereby she was allowed to make installment payments totaling $2.5 million, rather than pay the

entire amount as set forth in the agreement.  Marilyn's acknowledgement and agreement that

Nevada law governs the course of conduct and dealings among these parties is further evidenced

by the second agreement (2002) whereby AMP was to purchase Mellon's and Landess' shares of

stock because that agreement also sets forth that Nevada law should apply to any dispute

regarding the relations of the parties to the agreement. See Exhibit D, ¶ 13. The original Stock

Purchase Agreement (Marilyn/Landess) and the AMP/ Landess and Mellon agreement were

negotiated at arms length by independent counsel representing the various parties to both of

those agreements. Marilyn cannot now contend that she does not understand and agree that

Nevada law should apply to these proceedings.

Notably, Marilyn does not, and cannot, vigorously contend that the agreement containing

the forum selection clause the result of fraud or misrepresentation. Despite Marilyn's statements

that she was unaware that Mellon had a different arrangement regarding payment for his stock

and that he was sharing in the proceeds of Marilyn's payment to Landess, her written receipt

attached hereto as Exhibit A eviscerates any such contention. In other words, there is no credible

claim made by Marilyn that the original Stock Purchase Agreement between Marilyn and

Landess is unenforceable and the choice of law and forum provisions should be enforced. If

Marilyn contends that enforceability is affected by Mellon, then enforceability is an issue and

any action must be brought in the County of Clark, State of Nevada.

As this Court stated in HAB Carriers, Inc. v. Arrow Truck Sales, Inc., et al, 2007 U.S.

Dist. Lexis 62525 at *5:

> "This deferential approach to forum selection clauses is '...premised on the
> notion parties resisting their enforcement after the fact were compensated
> in advance for bearing the burden of which they now complain and will
> reap a windfall if they are committed to repudiate' them."

Marilyn agreed in writing, not only in the original Stock Purchase Agreement, but the

AMP Stock Purchase Agreement that Nevada law should apply to any proceeding concerning the

acquisition or ownership of stock in AMP. She should not be allowed to repudiate two (2)

different agreements and destroy the ability of Mellon to defend this action, as is set forth herein

below.

6306152v1 883553

## CONVENIENCE OF THE PARTIES AND
## WITNESSES WEIGHS IN FAVOR OF TRANSFER

Marilyn's contention that there is no basis for venue in the United States District Court for the District of Nevada is patently false. 28 U.S.C. § 1391(a)(2) provides in pertinent part as follows:

> "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only...a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated..."

This is a case involving a Nevada corporation, having its principal place of business at all times in Clark County, Nevada, concerning the development of an invention developed in Clark County, Nevada, by a Clark County, Nevada inventor. Both of the integral agreements concerning the transfer of stock provide that Nevada law will apply to the circumstances and there is a forum selection clause calling for enforcement actions to be brought in Clark County, Nevada.

Essentially, Marilyn's claim is that Mellon has failed to show that the District of Nevada is a more convenient venue for the presentation of evidence regarding the claims raised in Marilyn's Complaint. Marilyn states that she is a resident of Illinois. Marilyn states that there were meetings of the AMP board of directors in Chicago, Illinois. Marilyn states that certain testing was done at the Northwestern University Medical School concerning the APN needle. All of these facts are true but they are not at all pertinent to the factors that should be considered by this Court, according to its prior decisions.

In <u>Petersen v. Union Pacific Railroad</u>, 2006 U.S. Dist. Lexis 25061, this Honorable Court stated that the availability of non-party witnesses is important wherein this Court said:

> "On the other hand, issues related to non-party witnesses implicate aspects of each of the *§ 1404(a)* factors. The cost of obtaining attendance of

9

willing witnesses involves the convenience of the parties; the need for such witnesses to travel to the courthouse to testify relates to the convenience of the witnesses; and finally, the availability of compulsory process for attendance of unwilling witnesses speaks to the interest in justice."

Marilyn makes a blanket statement that there are non-party witnesses in Chicago, California, and perhaps Florida who may be called to testify in this matter. Besides identifying some medical investigators at Northwestern University who tested the APN product, she provides no insight regarding any of the proposed testimony of these other witnesses. It is plain from her papers, however, that none of the non-party witnesses in Illinois or California have any knowledge regarding the discussions leading up to Marilyn's acquisition of AMP stock and the conduct of the parties after the acquisition that resulted in a jury verdict against Marilyn in the amount of $16.5 million in favor of Landess, Siggelkow and other shareholders of AMP including Mellon.

This is a case concerning the acquisition of stock and the conduct of stockholders, directors, and officers after the acquisition of stock. There is nothing about this case that concerns the activities of medical investigators at Northwestern University or other undescribed witnesses in other states. There are a certain number of witnesses who have personal knowledge regarding the discussions of these parties concerning the discussions prior to acquisition, the acquisition, and activities post-acquisition by the shareholders, directors and officers of AMP. *All* of these non-party witnesses reside in and are located in Clark County, Nevada (save and except for Marilyn's son, Duke Miglin).

*Landess* is a former shareholder, president, CEO and active participant in AMP since its inception. He resides in Clark County, Nevada and has personal knowledge of the facts alleged by Marilyn in her Complaint as well as Marilyn's activities after acquisition that resulted in the damages that she is now seeking to recover from Mellon. Landess has personal knowledge of

10

the negotiations that resulted in Marilyn's acquisition of AMP stock.  Landess has personal

knowledge of his efforts to re-purchase Marilyn's AMP shares of stock and her refusal to re-sell,

even for a return of the amount she paid.  Landess has personal knowledge of the facts regarding

Marilyn's breach of fiduciary duty, fraud, and intentional infliction of emotional distress that

resulted in a **COMPENSATORY** verdict against Marilyn in the amount of $16.5 million.  It is

the settlement of that jury verdict that Marilyn is now trying to recover from Mellon and it is

inconceivable that a trial could go forward without Landess' live testimony regarding Marilyn's

activity.  This Court has previously held that it is the "quality" of the testimony that is important

in determining whether a Motion to Change Venue should be granted. It is possible that Landess'

testimony could be recorded stenographically or by video and presented to a jury in Chicago, but

his testimony is so integral to the defense of Mellon in this action, Mellon should have the

opportunity to present Landess live at trial for the consideration of the jury.  Since he is outside

the subpoena jurisdiction of the Northern District of Illinois, this is a significant reason that a

change of venue should be granted.

   ***Jonathan Crain*** is a resident of Clark County, Nevada.  Jonathan Crain was present at

meetings leading up to Marilyn's acquisition of AMP stock.  Jonathan was present at all board

meetings after Marilyn's acquisition of stock in AMP because he was the Secretary and he

recorded the notes of these meetings.  Jonathan Crain is outside the subpoena power of the

United States District Court for the Northern District of Illinois.

   ***Cameron Stuart*** was AMP's President from September, 2000 (after Marilyn's

acquisition) until June, 2001.  He was also a member of the board of directors and participated

and attended many board meetings.  His testimony and personal knowledge regarding the

activities of Marilyn that resulted in the substantial jury verdict in favor of Landess and the other

11

shareholders of AMP is essential.

**Larry Siggelkow** is a resident of Clark County, Nevada. Larry Siggelkow is a shareholder and acted as the shareholder representative in the lawsuit against Marilyn which resulted in the $16.5 million **COMPENSATORY** verdict award. Siggelkow has personal knowledge of facts and circumstances concerning board meetings and decision making regarding the APN after Marilyn's acquisition of AMP stock. Siggelkow also has personal knowledge of Mellon's activities as a shareholder of AMP and his attendance and participation in board meetings and otherwise.

**Dr. Linda Woodson** is a physician located in Clark County, Nevada. Ms. Woodson had discussions with Marilyn and performed the initial treatment of Marilyn with the APN that resulted in Marilyn's acquisition of stock. Dr. Woodson's testimony is essential to the defense of Mellon given the claims and allegations made by Marilyn in her Complaint.

**Dennis Gordon, MD** is a resident of Clark County, Nevada. Gordon has personal knowledge regarding his invention of the APN and the original capitalization of AMP. Gordon was on the board of directors of AMP and participated in decision making with regard to the development and marketing efforts. He has personal knowledge of board meetings and activities of Marilyn that resulted in the jury verdict against her in 2007.

All of these individuals **are** the individuals who have personal knowledge of facts pertinent to these proceedings. Marilyn cannot point to any other person (other than her son) who has personal knowledge of the acquisition and operation of AMP after her acquisition. The non- party witnesses whose testimony will be critical to the determination of the claims raised in Marilyn's Complaint are all located in Clark County, Nevada, outside the subpoena jurisdiction of the Northern District of Illinois and, as it is painfully clear, not all of these witnesses will be

friendly or cooperative with Mellon such that the subpoena power may well be necessary to secure their appearance and testimony.

## THE INTEREST OF JUSTICE COMPONENT
## ALSO WEIGHS IN FAVOR OF TRANSFER

This Court in <u>Petersen v. Union Pacific Railroad</u>, *supra*, also discussed the importance of the interest of justice component in determining whether to transfer venue. This Court stated that:

> "The interest of justice component focuses on the efficient and fair administration of the courts more than on the interests of the litigants themselves. ***See Coffey***, 796 F.2d at 220- 21. Relevant to this component is the relative speed with which the case will get to trial, having a judge familiar with the applicable law try the case, the relationship of the parties and claims to the forum and access to sources of proof including the possibility of viewing the premises. *See Heller*, 883 F.2d at 1293; *Zalutsky, Pinski & DiGiacomo, Ltd. v. Kleinman*, 747 F.Supp. 457, 462-63 (N.D. Ill. 1990)."

2006 U.S. Dist. Lexis 25061 at *12.

In this regard, Marilyn again raises only one valid argument with regard to the administration of justice. Marilyn is a resident of the Northern District of Illinois. Each and every other factor counsels in favor of a transfer of venue to the District of Nevada.

It is undisputed that Marilyn has agreed, in two (2) formal written agreements, with independent counsel, that the laws of the State of Nevada will govern these proceedings. It is presumed that a United States District Court sitting in the District of Nevada would have some more familiarity than this Court regarding the nature and requirements of Nevada law.

As pertains to the access to witnesses and evidence, it cannot be contended that there are any non-party witnesses to Marilyn's acquisition of stock and her conduct following the acquisition of that stock that resulted in the damages she now seeks to recover from Mellon, who reside outside Clark County, Nevada. Marilyn's suggestion that medical researchers at

6306152v1 883553

Northwestern University Medical School, or undescribed witnesses in California and/or Florida may testify does not satisfy this factor. It is critical to the defense of Mellon that he be allowed to call, as live witnesses, the persons who have personal knowledge of the meetings, discussions, documents, events and activities surrounding Marilyn's acquisition of AMP stock and the subsequent verdict in favor of Landess and the other shareholders against Marilyn for her deceitful and fraudulent conduct after her acquisition of the stock, because Marilyn now seeks to shift the damages she paid to the other shareholders to the responsibility to Mellon.

Finally, Marilyn raises two (2) either irrelevant or slanderous issues that have no bearing on this Court's determination regarding venue. First, Marilyn raises an issue regarding a real estate transaction in Chicago wherein it can easily be shown that Marilyn defrauded Mellon of several million dollars. That transaction, however, is totally unrelated to any fact involving Marilyn's acquisition of AMP stock or her activities with regard to the AMP corporation thereafter. Marilyn's irrelevant comment about the Chicago real estate transaction and fraud may be the result of a guilty mind or conscience, but it has no bearing on these proceedings. Second, Marilyn simply attaches a copy of an article from the *Los Angeles Times* that is critical of certain judges in Clark County, Nevada. It is unknown why Marilyn attached this article, but it is hoped that she did not attach it in some way to suggest that the United Stated District Court for the District of Nevada is not an honest and forthright tribunal.

## CONCLUSION

Other than the fact that Marilyn Miglin is a resident of the Northern District of Illinois, there are no other non-party witnesses or evidence that can be found in that location. The non-party witnesses and evidence must be within the subpoena power of the Court to allow Mellon a fair opportunity to defend himself in these proceedings. All of the pertinent activities regarding the Nevada corporation having its principal place of business in Clark County, Nevada and the

14

witnesses to discussions and meetings are located in Clark County, Nevada. Venue must be transferred, particularly in comparison to other decisions of this Court transferring venue to districts other than the Northern District of Illinois.

Dated this 10th day of April, 2008.


David R. Creagh, Esq. (ARDC No. 6191452)            Respectfully submitted,
David J. Richards, Esq. (ARDC No. 6230119)
**HINSHAW & CULBERTSON LLP**                        **HINSHAW & CULBERTSON LLP**
222 North LaSalle Street
Suite 300
Chicago, IL  60601-1081
Phone: (312) 704-3000
Fax:    (312) 704-3001            By:    s/David R. Creagh
                                         One Of The Attorneys For Defendant,
                                         JAMES JOSEPH "TED" MELLON

6306152v1 883553

## PROOF OF SERVICE

I, the undersigned, a non-attorney on oath, certify that I filed and served the above and foregoing Reply in Support of Motion to Transfer Venue via electronic delivery pursuant to the Court's electronic filing and service system, addressed to the persons referenced below, on the 10th day of April, 2008:

| | |
|---|---|
| Rafey S. Balabanian, Esq.<br>Cohon Raizes & Regal LLP<br>208 South LaSalle Street<br>Suite 1860<br>Chicago, IL  60604<br>Phone:  (312) 726-2252<br>Fax:     (312) 726-0609 | Cornelius P. Brown, Esq.<br>Cohon Raizes & Regal LLP<br>208 South LaSalle Street<br>Suite 1860<br>Chicago, IL  60604<br>Phone: (312) 726-2252<br>Fax:     (312) 726-0609 |
| [x]Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, I certify that the statements set forth herein are true and correct. | s/Joseph D. Niemeier |

6306152v1 883553