**EXHIBIT A**

## AGREEMENT FOR SALE AND TRANSFER OF STOCK

THIS AGREEMENT FOR SALE AND TRANSFER OF STOCK (this "Agreement") is made and entered into on the 15 day of August, 2000, by and between JASON G. LANDESS and JONATHAN D. CRAIN (hereinafter collectively the "SELLERS"), MARILYN MIGLIN, an individual, and/or her nominee ("MIGLIN"), and TED MELLON, an individual ("MELLON").

### WITNESSETH:

WHEREAS, JASON G. LANDESS ("LANDESS") is the holder of 2,375 shares of stock in Advanced Medical Products, Inc., a Nevada corporation ("Corporation") evidenced by Stock Certificate No. 1, which represents 95% of the issued and outstanding shares of the Corporation;

WHEREAS, JONATHAN D. CRAIN ("CRAIN") is the holder of 125 shares of stock in the Corporation evidenced by Stock Certificate No. 2, which represents 5% of the issued and outstanding shares of the Corporation;

WHEREAS, SELLERS desire to sell a portion of the Corporation's stock (hereinafter the "Stock") to MIGLIN by LANDESS transferring 600 shares of his Stock in the Corporation to MIGLIN, and by CRAIN transferring 25 shares of his Stock in the Corporation to MIGLIN, and MIGLIN desires to buy the Stock from SELLERS;

WHEREAS, SELLERS desire to sell a portion of the Stock to MELLON by LANDESS transferring 600 shares of his Stock in the Corporation to MELLON, and by CRAIN transferring 25 shares of his Stock in the Corporation to MELLON, and MELLON desires to buy the Stock from SELLERS; and

WHEREAS, MIGLIN, MELLON and SELLERS have reached an agreement upon terms and conditions by which SELLERS are willing to sell and MIGLIN and MELLON are willing to buy the Stock;

NOW, THEREFORE, subject to the following conditions and in consideration of the promises and agreements set forth below, SELLERS, MIGLIN, and MELLON hereby agree as follows:

1. **MIGLIN'S PURCHASE PRICE AND PAYMENT.** Subject to the terms and conditions set forth below, SELLERS hereby agree to sell the Stock to MIGLIN, and MIGLIN hereby agrees to buy the Stock from SELLERS, for a total Purchase Price (hereinafter the "Purchase Price") of TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00), to be paid as follows:

    A. MIGLIN shall on or before August 20, 2000, pay the sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) by personal check dated August 20, 2000.

1

    B.    MIGLIN shall on or before September 20, 2000 pay the sum of ONE MILLION TWO HUNDRED FIFTY THOUSAND DOLLARS ($1,250,000.00) by cashier's check and/or wire transfer to Jason G. Landess, P.C.'s Trust Account, Bank of America Account Number 014434096, ABA Routing Number 122400724.

    C.    MIGLIN shall on or before June 20, 2001 pay the additional sum of ONE MILLION DOLLARS ($1,000,000.00) by cashier's check and/or wire transfer to Jason G. Landess, P.C.'s Trust Account, Bank of America Account Number 014434096, ABA Routing Number 122400724. As evidence of this obligation, MIGLIN agrees to execute and deliver a promissory note in favor of SELLERS in the sum of ONE MILLION DOLLARS ($1,000,000.00) (the "Note"). The Note shall bear interest at the rate of 11.5% simple interest per annum and the entire balance of unpaid principal and interest shall be paid on or before June 20, 2001.

2. **MELLON'S PURCHASE PRICE AND PAYMENT.** Subject to the terms and conditions set forth below, SELLERS hereby agree to sell the Stock to MELLON, and MELLON hereby agrees to buy the Stock from SELLERS, for a total Purchase Price (hereinafter the "Purchase Price") of TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00), to be paid as follows:

    A.    MELLON shall on or before August 15, 2000, pay the sum of TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) by cashier's check and/or wire transfer to Jason G. Landess, P.C.'s Trust Account, Bank of America Account Number 014434096, ABA Routing Number 122400724.

3. **EXECUTION, DELIVERY AND TRANSFER OF STOCK.** Upon payment of the consideration recited in Paragraph 1(A), SELLERS shall execute Stock Certificate No. 1 and Stock Certificate No. 2 and turn those certificates over to the Corporation. The Secretary/Treasurer of the Corporation shall then be authorized and directed to issue Stock Certificate No. 3 for 625 shares to MIGLIN, which certificate shall represent 25% of the issued and outstanding stock of the Corporation. Upon issuance of Certificate No. 3 to MIGLIN, the Secretary/Treasurer shall deliver that certificate to Southwest Escrow Company ("Southwest") in Las Vegas, Nevada to be held in escrow until MIGLIN pays all the amounts due under Paragraph 1. SELLERS shall execute a Safekeeping Agreement with Southwest for the purpose of escrowing Certificate No. 3 until MIGLIN has paid all of the sums described in Paragraph 1. Upon payment of all sums MIGLIN is required to pay under Paragraph 1, SELLERS shall immediately direct Southwest to release and deliver Certificate No. 3 to MIGLIN. MIGLIN shall enjoy all voting rights and other rights and privileges attendant to common stock ownership in the Corporation during the time Certificate No. 3 is in escrow. Upon payment of the consideration recited in Paragraph 2(A), SELLERS shall authorize and direct the

2

Secretary/Treasurer of the Corporation to issue Stock Certificate No. 4 for 625 shares to MELLON, which certificate shall represent 25% of the issued and outstanding stock of the Corporation. The Secretary/Treasurer shall thereafter issue the remaining 50% of the stock as directed by SELLERS.

4. **SELLERS' REPRESENTATIONS:** The following are representations, warranties and covenants of SELLERS to MIGLIN and MELLON, it being understood and agreed that MIGLIN and MELLON'S obligations hereunder are and shall be fully conditioned upon the truth and completeness of any representations and warranties set forth as follows:

    (a) That the Stock as represented by the Certificates has been duly authorized and validly issued and is fully paid and non-assessable, with no personal liability attaching to ownership thereof;

    (b) That there are only 2,500 shares of authorized stock in the Corporation;

    (c) That the Stock is being sold to MIGLIN and MELLON is free and clear of all liens, claims and encumbrances of any kind whatsoever;

    (d) That they are not a party to any agreement, arrangement or understanding with respect to the authorization, issuance, sale, redemption or other disposition of any shares of the Stock, including, without limitation, any options, warrants, calls, rights or other commitments relating thereto; and

    (e) That the Corporation is the owner of all right, title, and interest in and to that certain medical device used for the treatment of spider veins known as the "Arachnophlebectomy Needle", and all of the patent rights appurtenant thereto.

5. **DEFAULT:** Should MIGLIN and/or MELLON default in payment of the amounts due under Paragraph 1 or Paragraph 2, MIGLIN and/or MELLON agree that any and all amounts previously paid to SELLERS shall be forfeited and belong to SELLERS and that MIGLIN and/or MELLON shall not be entitled to any pro rata interest in the stock of the Corporation. Such a default and resulting forfeiture would in no manner preclude SELLERS from pursuing any and all other remedies at law or in equity as described in Paragraph 13 of this Agreement.

6 **SURVIVAL:** The parties hereto agree that all of their respective representations, warranties and covenants shall survive the closing of this transaction as well as the delivery of the SELLERS' stock certificates and consideration therefore. All representations and warranties as made herein have been relied upon by MIGLIN and MELLON and MIGLIN and MELLON

3

Case 1:07-cv-06863   Document 35-2   Filed 04/10/2008   Page 5 of 6

Aug 23 00 02:34p   Case 1:07-cv-06863   MIGLIN PROP ment 32-3   Filed 03/29/2008   Page 17 of 27  p.5
Aug-15-00 09:39A   MIGLIN PROP   7023201417   P.04

have made no independent inquiry into the truth and accuracy of such warranties and rely solely upon their truthfulness and accuracy in entering into this Agreement.

7. **INDEMNIFICATION OF MIGLIN AND MELLON:** SELLERS agree to indemnify MIGLIN and MELLON and hold them harmless from and against any and all demands, claims, actions or causes of action, assessments, losses, damages, liabilities, interest and penalties, costs and expenses (including, without limitation, reasonable legal fees and disbursements incurred in connection therewith and in seeking indemnification therefore, and any amounts or expenses incurred as a result of any such proceeding, claim, demand, assessment or judgment) resulting from, arising out of, or imposed upon or incurred by MIGLIN and/or MELLON by reason of:

    a) Any breach of any representation or warranty of SELLERS set forth in the immediately preceding paragraph of this Agreement; or

    b) Any other acts or omissions of SELLERS, either before or subsequent to execution of this Agreement, that may cause damages or impose liability upon MIGLIN and/or MELLON as a result of MIGLIN and/or MELLON'S purchase hereunder.

8. **AMENDMENTS:** This Agreement may be amended, modified or supplemented only by a written instrument executed by the parties hereto. This Agreement may not be assigned nor may any of MIGLIN'S rights to purchase the Stock be sold, hypothecated, transferred, pledged, or assigned to anyone without the prior written consent of SELLERS. SELLERS shall be entitled to sell, hypothecate, transfer, pledge, or assign any of their stock in the Corporation without MIGLIN'S consent and without offering MIGLIN an opportunity to sell any or all of her stock to prospective purchasers of SELLER'S stock.

9. **WAIVER:** The provisions of this Agreement may be waived only by an instrument in writing executed by the party granting the waiver. No failure on the part of either party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

10. **TIME IS OF THE ESSENCE:** All obligations to be performed under this Agreement including, but not limited to, MIGLIN'S payment under Paragraph 1 must be made in a timely fashion, time being of the essence.

11. **ENTIRE AGREEMENT:** This Agreement and the documents executed pursuant hereto set forth the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersede any prior negotiations, agreements, understandings or arrangements between the parties hereto with respect to the subject matter hereof.

4

12. **BINDING EFFECT**: This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

13. **REMEDIES**: Should any party to this Agreement default in the performance of their obligations, the non-defaulting party shall be entitled to resort to any and all legal and equitable remedies to enforce this Agreement including, but not limited to, specific performance. Each and every remedy shall be cumulative and shall be in addition to any other remedy given hereunder which now or hereafter exists at law or in equity or by statute or otherwise, and the election by a party of one or more remedies shall not constitute a waiver of that party's right to pursue other available remedies.

14. **APPLICABLE LAW**: This Agreement and the legal relations between the parties hereto shall be governed by and construed in accordance with the internal laws of the State of Nevada applicable to contracts made and to be performed wholly in such state. Any legal action or other proceeding for the enforcement of this Agreement shall be brought only in the County of Clark, State of Nevada.

15. **ATTORNEYS' FEES**: In the event that legal action is brought with respect to this Agreement, or the rights and obligations of any party thereto, the prevailing party in said action shall be entitled to costs and reasonable attorneys' fees from the non-prevailing party, the amount of which shall be determined by the Court in said action. For the purposes of this paragraph the "prevailing party" shall be that party which is entitled to an award of his or her costs of suit.

16. **ADDITIONAL DOCUMENTS**: The parties agree to execute such additional documents and to furnish such additional data as may be necessary or desirable to evidence or consummate the transaction provided for herein and specifically vest title or ownership in MIGLIN and MELLON of the Stock which is being acquired by MIGLIN and MELLON under this Agreement.

EXECUTED as of the day and year first above written.

"SELLER"
JASON G. LANDESS

By /s/ Jason G. Landess
    Jason G. Landess

"MIGLIN"
MARILYN MIGLIN

By /s/ Marilyn Miglin
    Marilyn Miglin

"SELLER"
JONATHAN D. CRAIN

By /s/ Jonathan D. Crain
    Jonathan D. Crain

"MELLON"
TED MELLON

By /s/ Ted Mellon
    Ted Mellon

5