**EXHIBIT D**

LAW OFFICES
# BALLARD SPAHR ANDREWS & INGERSOLL, LLP

1225 17TH STREET, SUITE 2300
DENVER, COLORADO 80202-5596
303-292-2400
FAX: 303-296-3956
LAWYERS@BALLARDSPAHR.COM

PHILADELPHIA, PA
BALTIMORE, MD
CAMDEN, NJ
SALT LAKE CITY, UT
VOORHEES, NJ
WASHINGTON, DC

THOMAS H. DUNCAN
DIRECT DIAL: 303-299-7321
DUNCAN@BALLARDSPAHR.COM

March 12, 2002

<u>Via Federal Express</u>

Mr. Ted Mellon
4860 Turfway Trail
Harbor Springs, Michigan 49740

Re: Stock Purchase Agreement

Dear Ted:

      I have enclosed two execution copies of the Stock Purchase Agreement between you and Advanced Medical Products, Inc. (the "Company"). As we discussed, please execute both copies of the Agreement, and the related Stockholder Disclosure, on the tabbed pages. Then forward both of the executed Agreements to Dave Rubenstein in the enclosed FedEx envelope. Mr. Rubenstein will arrange for execution of the agreement on behalf of the Company and forward a copy to us.

      Please give me a call if you have any questions in connection with this matter.

Yours truly,

*Tom Duncan*

Thomas H. Duncan

THD/lt
Enclosures

CO DOCS A #104793 v1

## STOCK PURCHASE AGREEMENT

STOCK PURCHASE AGREEMENT (the "Agreement") dated March 13, 2002 by and between Advanced Medical Products, Inc., a Nevada corporation (the "Corporation") and Ted Mellon, an individual resident of California ("Stockholder").

WHEREAS, the Corporation owns the rights to U.S. Serial Application No. 09/421,611 (the "Patent"), and has the right thereunder to manufacture, sell and license arachnophlebectomy needles (the "Product"); and

WHEREAS, Stockholder owns 837.5 shares (33.5%) of the issued and outstanding common stock, no par value, of the Corporation (the "Purchased Shares"); and

WHEREAS, Stockholder desires to sell to the Corporation and the Corporation desires to purchase from Stockholder all of the Purchased Shares.

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, the parties agree as follows:

1. <u>Purchase of Stock</u>. At the Closing, the Corporation shall purchase and redeem from Stockholder, and Stockholder shall sell, transfer and deliver to the Corporation, all of Stockholder's right, title and interest in and to the Purchased Shares free and clear of all options, warrants, liens, claims and encumbrances of any nature whatsoever. In addition, at Closing all indebtedness owing by Corporation to Stockholder (including the $125,000 advance) shall be deemed cancelled.

2. <u>Closing</u>. The closing ("Closing") shall take place (the "Closing Date"), concurrent with the first to occur of the merger of the Corporation with and into Western Medical Devices, Inc. ("Western") or its affiliates or the sale of substantially all of the Corporation's assets to Western or its affiliates at the offices of Gardner, Carton & Douglas or at such other date and place as the parties may agree.

3. <u>Purchase Price and Payment</u>. The Purchase Price for the Purchased Shares and in full satisfaction of that certain Promissory Note dated September 25, 2002 in the original principal amount of $125,000 (the "Note") shall be $2.00 for each unit of Product sold by the Corporation (not including any Product distributed without charge and less returns), up to a maximum payment of $3,145,000. The amounts payable pursuant to this Section 3 shall be payable quarterly commencing the last day of the first full calendar quarter following Closing and each payment shall be accompanied by a statement calculating the payment for such period. Stockholder shall have the right, at his sole expense and subject to reasonable notice, to audit such statements once each calendar year; provided, however, that any such audit shall be conducted in the manner so as not to unreasonably interfere with the business of the Corporation.

4. <u>Deliveries at Closing</u>. At the Closing, Stockholder shall deliver to the Corporation (a) the stock certificate or certificates representing the Purchased Shares, duly endorsed in blank or with separate stock powers duly endorsed in blank, in proper form for

transfer and (b) all other property of the Corporation in Stockholder's possession, including all books and records, (c) a resignation from all positions with the Corporation and (d) the cancelled Note and an acknowledgment of the cancellation of any amounts owing to Stockholder by Company, including the $125,000 indebtedness.

5. Covenants of the Stockholder.

5.1. Proprietary Information. "Proprietary Information" means all information pertaining in any manner to the business of the Corporation, unless (i) the information is or becomes publicly known through lawful means; (ii) the information was part of Stockholder's general knowledge prior to Stockholder's relationship with the Corporation; or (iii) the information is disclosed to Stockholder without restriction by a third party who rightfully possesses the information and did not learn of it from the Corporation. This definition includes, but is not limited to, (A) schematics, techniques, development tools, processes, computer printouts, computer programs, design drawings and manuals, electronic codes, formulas and improvements; (B) information about costs, profits, markets, sales, customers, and bids; (C) plans for business, marketing, future development and new product concepts; and (D) information on the Corporation's employees, agents, or divisions.

5.2. Use of Information. Stockholder shall maintain in confidence and shall not, directly or indirectly, disclose or use, either during or after the term of this Agreement, any Proprietary Information, confidential information, or know-how belonging to the Corporation, whether or not it is in written or permanent form. At Closing, Stockholder shall deliver to the Corporation all material in Stockholder's possession, custody or control relating to the Corporation's business, including Proprietary Information.

5.3. Nonsolicitation. Stockholder shall not, for a period of one year immediately after the Closing either directly or indirectly (a) call on, solicit, or take away any of the Corporation's customers or potential customers either for Stockholder or for any other person or entity, or (b) solicit or take away or attempt to solicit or take away any of the Corporation's employees or Stockholder either for Stockholder or for any other person or entity.

6. Representations and Warranties of Stockholder. Stockholder hereby represents and warrants to the Corporation that, except as set forth in a disclosure letter from Stockholder to the Corporation, attached hereto as Exhibit A:

6.1. Title to Shares. Stockholder owns the Shares free and clear of all options, warrants, liens, claims and encumbrances of any nature whatsoever and the Shares represent all of the issued and outstanding shares of capital stock of the Corporation owned beneficially or of record by Stockholder.

6.2. Authorization. Stockholder has all requisite power and authority to execute and deliver this Agreement, to carry out his obligations hereunder and to consummate the transactions contemplated hereby. This Agreement constitutes the valid and binding agreement of Stockholder and shall be enforceable against him in accordance with its terms, subject to applicable bankruptcy and creditors' rights and applicable principles of equity.

-2-

6.3. <u>No Violation</u>. Neither the execution and delivery of this Agreement by Stockholder nor the consummation by him of the transactions contemplated hereby constitutes a violation of, or conflicts with, or constitutes a default under, or creates or causes the acceleration of the maturity of any debt, obligation or liability affecting the Shares or the Corporation, or results in the creation or imposition of any option, warrant, lien, claim or encumbrance of any nature whatsoever upon any of the Shares under (a) any contract, agreement or other commitment to which Stockholder (or, to Stockholder's knowledge, the Corporation) is a party or by which he (or, to Stockholder's knowledge, the Corporation) is bound; (b) any judgment, decree, order, regulation or rule of any court or governmental authority; or (c) any statute or law. No consent of any person or entity is required in connection with the execution, delivery and performance of this Agreement by Stockholder.

6.4. <u>Unknown Liabilities</u>. To Stockholder's knowledge, the Corporation is not subject to any liability, including without limitation unasserted claims, whether absolute contingent, accrued or otherwise, except those set forth in the financial statement of the Corporation attached hereto as Exhibit B. Other than arising under this Agreement, the Corporation has no liabilities, obligations or agreements to or with Stockholder or any person controlled by, controlling or under common control with Stockholder.

6.5. <u>Patent</u>. To Stockholder's knowledge, the Corporation owns and possesses all right, title and interest to the Patent and no claim by any third party contesting the validity, enforceability, use or ownership of the Patent has been made, is currently outstanding or is threatened. Stockholder has not received any notice of, nor is he aware of any facts which would indicate a likelihood of infringement or misappropriation by or conflict with any third party with respect to the Patent. To Stockholder's knowledge, the Corporation has not infringed, misappropriated, or otherwise conflicted with any rights of any third parties nor is it aware of any infringement, misappropriation or conflict which will occur as a result of the transactions contemplated hereunder. To Stockholder's knowledge, the Corporation is not party to or bound by any license or other agreements with respect to the Patent. Stockholder has assigned to the Corporation all his right, title and interest in the Patent, the Product and all goodwill associated therewith.

6.6. <u>Full Disclosure</u>. Stockholder's representations and warranties do not contain any untrue statement of a material fact or omit to state any material fact necessary to make the statements herein not misleading. Stockholder acknowledges that he has been given access to all information about the Corporation and its business and prospects as is necessary to enable him to make a fully informed investment decision with respect to his sale of Shares.

7. <u>Representations and Warranties of the Corporation</u>. The Corporation hereby represents and warrants to Stockholder that, except as set forth in a disclosure letter from the Corporation to Stockholder:

7.1. <u>Corporate Organization</u>. The Corporation is a corporation duly organized, validly existing, and in good standing under the laws of the State of Nevada. The Corporation

-3-

has all requisite power and authority (corporate and otherwise) to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby.

7.2. <u>Authorization</u>. The execution and delivery of this Agreement, the carrying out of the obligations hereunder and the consummation by the Corporation of the transactions contemplated hereby have been duly authorized by all necessary action (corporate and otherwise). This Agreement constitutes the valid and binding agreement of the Corporation and shall be enforceable against it in accordance with its terms, subject to applicable bankruptcy and creditors' rights are applicable principles of equity.

7.3. <u>No Violation</u>. Neither the execution and delivery of this Agreement, nor the consummation by the Corporation of the transactions contemplated hereby constitutes a violation of, or conflicts with, or constitutes a default under, or creates or causes the acceleration of the maturity of any debt, obligation or liability affecting the assets of the Corporation, or results in the creation or imposition of any lien, claim or encumbrance of any nature whatsoever upon any of the assets of the Corporation under (a) any term or provision of the Articles of Incorporation or by-laws of the Corporation; (b) any agreement, contract or other commitment to which the Corporation is a party or is bound; (c) any judgment, decree, order, regulation or rule of any court or governmental authority; or (d) any statute or law. No consent of any person or entity is required in connection with the execution, delivery and performance of this Agreement by the Corporation, which consent has not been obtained.

8. <u>Conditions Precedent</u>. It shall be a condition precedent to Stockholder's obligations hereunder that, at or prior to Closing, the Corporation shall have complied in all material respects with the covenants required to be performed by it at or prior to the Closing and that the representations and warranties of the Corporation shall be true and accurate in all material respects as of the Closing Date. It shall be a condition precedent to the Corporation's obligations hereunder that, at or prior to Closing, Stockholder shall have complied in all material respects with the covenants required to be performed by him hereunder at or prior to Closing and that the representations and warranties of Stockholder shall be true and accurate in all material respects as of the Closing Date.

9. <u>Survival and Indemnity</u>.

9.1. <u>Survival of Representations, Warranties and Covenants</u>. All statements made by Stockholder or the Corporation herein or in any other document, instrument or certificate delivered pursuant hereto shall be deemed representations and warranties of the party making such statements. The representations, warranties, covenants and agreements of all parties contained herein shall survive the Closing.

9.2. <u>Stockholder Indemnity</u>. Stockholder and his successors and assigns shall indemnify and hold the Corporation and its successors and assigns harmless from, against and in respect of any damage, loss, liability expense (including, without limitation reasonable expert witness and attorneys' fees), action suit, demand or judgment arising from or in connection with any inaccuracy, breach or violation by Stockholder of any of his representations, warranties, covenants or agreements contained in this Agreement or any document, certificate or schedule

-4-

delivered by Stockholder hereunder. The Corporation shall be entitled to recover the foregoing by offset against the payments to Stockholder otherwise due hereunder.

9.3. <u>Corporation Indemnity</u>. Corporation and its successors and assigns shall indemnify and hold Stockholder and its successors and assigns harmless from, against and in respect of any damage, loss, liability expense (including, without limitation reasonable expert witness and attorneys' fees), action suit, demand or judgment arising from or in connection with any inaccuracy, breach or violation by Corporation of any of its representations, warranties, covenants or agreements contained in this Agreement or any document, certificate or schedule delivered by Corporation hereunder.

10. <u>General Provisions</u>. The parties hereto further agree as follows.

10.1. <u>Expenses</u>. Each party shall pay all reasonable expenses incurred by or on behalf of him or it in connection with the authorization, preparation, execution and performance of this Agreement, including without limitation, all reasonable fees and expenses of agents, representatives, counsel and accountants. Stockholder shall pay all transfer taxes and title charges payable by reason of the transfer of the Shares hereunder.

10.2. <u>Brokers</u>. The parties each represent that none has retained nor used the services of any individual or entity so as to entitle such individual or entity to any compensation for a brokers', agents' or finders' fee or commission with respect to the transactions contemplated hereby.

10.3. <u>Notices</u>. All notices, requests, demands and other communications given hereunder shall be in writing and shall be deemed to have been duly given if delivered personally, given by prepaid telegram or mailed first-class, postage prepaid, registered or certified mail as follows:

If to the Corporation:

Advanced Medical Products, Inc.
Marilyn Miglin, L.P.
127 West Huron
Chicago, Illinois 60610
Attn: Duke Miglin

With a copy to:

Gardner, Carton & Douglas
321 North Clark Street
Suite 3400
Chicago, Illinois 60610
Attn: Dennis J. Carlin

-5-

If to Stockholder:

Ted Mellon
1350 Calle Rolf
Palm Springs, CA 92264

With a copy to:

Ballard Spahr Andrews & Ingersoll, LLP
1225 17th Street, Suite 2300
Denver, CO 80202
Attn: Thomas H. Duncan

or to such other person or address any party shall furnish to the others in writing.

11. <u>Mutual Release</u>. Except with respect to the liabilities and obligations of the parties under this Agreement and the other documents and instruments to be delivered pursuant to this Agreement, effective at Closing the Corporation and Stockholder hereby release and discharge each other and each of their respective successors, assigns, shareholders, officers and directors from all claims, demands and causes of action which they might have against the other by virtue of any matter or state of facts existing on or prior to the date of this Agreement, including all unknown or unanticipated acts, injuries, damages or losses.

12. <u>Assignment; Western Transaction</u>.

12.1. <u>Assignment</u>. Except as provided in Section 12.2 below, this Agreement may be assigned by the Corporation or Stockholder only with the prior written consent of the other party.

12.2. <u>Western Transaction</u>. The Corporation and Stockholder anticipate that the Corporation will enter into a transaction (the "Western Transaction") with Western, or another entity controlled or designated by Western (together with Western, the "Successor Entity"), pursuant to which the Corporation will either (i) merge with and into the Successor Entity, or (ii) the Successor Entity will acquire substantially all of the assets of the Corporation. Stockholder hereby consents to the Western Transaction, provided that, in connection therewith:

- the Corporation shall assign this Agreement to, and the obligations of the Corporation under this Agreement shall assumed by, the Successor Entity; and

- the amounts due under Section 3 of this Agreement shall be treated as (i) merger consideration to be paid by the Successor Entity to the Stockholder in the event the Western transaction is structured as a merger or (ii) as the purchase price paid by the Successor Entity for the Shares in an acquisition of the Shares effected immediately prior to the sale of substantially all of the assets of the Corporation to the Successor Entity if the Western Transaction is so structured.

13. **Miscellaneous.** This Agreement shall be governed, construed and enforced in accordance with the laws of the State of Nevada. This Agreement and the documents, instruments and agreements referred to herein set forth the entire agreement of the parties in respect to the transactions contemplated hereby and supersede all prior agreements and understandings relating thereto. This Agreement shall be binding upon, and inure to the benefit of and be enforceable by the parties hereto and by their respective heirs, executors, legal representatives, successors and permitted assigns. Any term or condition of this Agreement may be waived or modified at any time by the party hereto which is entitled to the benefit thereof, but only in a duly executed writing. No waiver by any party hereto of any condition, or of the breach of any term, covenant, representation or warranty contained in this Agreement shall be construed as a further or continuing waiver of any such condition or of the breach of any other term, covenant, representation or warranty of this Agreement. The Corporation shall not merge with or into a third party, or sell substantially all of its assets to a third party, unless such third party assumes the Corporation's obligations hereunder; provided that consent is hereby given to a merger with or into, or a sale of assets to, Western or its affiliates.

14. **Counterparts.** This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15. **Further Assurances.** At and after Closing, if any further action is necessary to carry out the purposes of this Agreement, the Corporation and Stockholder, as the case may be, shall take all such action without any further consideration therefor.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above written.

THE CORPORATION
Advanced Medical Products, Inc.

By: _____
Its: Chairman of the Board

STOCKHOLDER

_____
Ted Mellon

09/18/2021  11:18   18086671511           JASON LANDESS                    PAGE  01/01

# NOTICE OF ASSESSMENT ON THE STOCK OF
# ADVANCED MEDICAL PRODUCTS, INC.

TO: ALL SHAREHOLDERS

Please take notice that on this date the Board of Directors of Advanced Medical Products, Inc., deeming the best interest of the corporation to so require, have unanimously voted to assess the stock of the corporation the total amount of $30,000.00.

Each stockholder is responsible for paying their respective share of the $30,000.00. Based upon the number of shares owned the following amounts should be paid no later than October 1, 2001:

| Stockholder | % Shares | Assessment Amount |
|---|---|---|
| Ted Mellon | 33.5% | $10,050.00 |
| Marilyn Miglin | 25% | $7,500.00 |
| Jason G. Landess | 16.75% | $5,025.00 |
| Dennis P. Gordon | 16.75% | $5,025.00 |
| Jonathan Crain | 3% | $900.00 |
| Cameron Stuart | 3% | $900.00 |
| Larry Siggelkow | 2% | $600.00 |
| | 100% | $30,000.00 |

Executed this 18th day of September, 2001.

DIRECTOR

*[signature]*
JASON G. LANDESS

*[handwritten notes:]* SHARE agmt Holder / ARTICLES OF INC / BYL