IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MARILYN MIGLIN, | ) | |
| | ) | |
| Plaintiff , | ) | Case No. 07 C 6863 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| JAMES JOSEPH "TED" MELLON, | ) | |
| | ) | |
| Defendant . | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marilyn Miglin ("Miglin") brought suit in the Circuit Court of Cook County Illinois alleging fraud against James Joseph "Ted" Mellon ("Mellon"). The case was then removed to this Court. Mellon now moves for transfer to the United States District Court for the District of Nevada, arguing that such transfer is required by a forum selection clause in the Stock Purchase Agreement as well as under 28 U.S.C. § 1404.

## STATEMENT OF FACTS

Miglin alleges that Mellon fraudulently induced her to invest in a new spider vein treatment to be distributed by American Medical Products ("AMP"). Complaint at ¶ 4. Specifically, Miglin asserts in her Complaint that Mellon fraudulently induced her into buying $2,500,000 of stock in AMP as well as paying additional sums to AMP in order to promote and market the spider vein treatment. *Id*. at ¶¶ 4-7. Mellon also allegedly told her that he would invest $2,500,000 in AMP when he in fact did not and instead withdrew money from AMP for the benefit of himself and a company in which he had an interest. *Id*. at ¶¶ 7-8. Miglin asserts that Mellon continues in a

scheme to defraud her by demanding money for his stock in AMP, alleging that he has a contract with her for the purchase of such stock. *Id*. at ¶ 13.

Miglin signed a Stock Purchase Agreement in connection with her acquisition of stock in AMP. *Id*. at ¶ 7; Stock Purchase Agreement at p. 5. The Agreement states: "This Agreement and the legal relations between the parties hereto shall be governed by and construed in accordance with the internal laws of the State of Nevada applicable to contracts made and to be performed wholly within such state. Any legal action or other proceeding for the enforcement of this Agreement shall be brought only in the County of Clark, State of Nevada." Stock Purchase Agreement at ¶ 14.

## DISCUSSION

### The Effect of the Forum Selection Clause

The first question before the Court is whether to honor the forum selection clause contained within the agreement in dispute. We start with the first premise that forum selection clauses are prima facie valid and enforceable. *Penn, L.L.C. v. New Edge Network*, *Inc.*, No. 03 C 5496, 2003 WL 22284207, at *2 (N.D.Ill. October 3, 2003) *citing Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375-76 (7th Cir. 1990). Such clauses are enforced even when parties allege that the contract containing the clause is void or unenforeceable. *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006). A forum selection clause is invalid only if the clause itself was procured by fraud. *Id*. Here, Miglin makes no allegations that the forum selection clause in the Stock Purchase Agreement was procured by fraud and thus we presume that it is valid and enforceable.

Courts construe forum selection clauses very broadly. Forum selection clauses in contracts govern claims other than breach of contract, including claims of fraud. "A dispute over a contract

2

does not cease to be such merely because instead of charging breach of contract the plaintiff charges fraudulent breach or fraudulent inducement, or fraudulent performance." *Am. Patriot Ins. Agency v. Mut. Risk Mgmt.*, 364 F.3d 884, 889 (7th Cir. 2004) (suit concerned contracts other than that containing the forum selection clause and plaintiffs argued fraud). *See also*, *Penn L.L.C.*, No. 03 C 5496, 2003 WL 22284207, at *2 (forum selection clause governed tortious interference and fraud claims). Indeed, "where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain [as to the appropriate forum for litigation]." *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) *citing Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3rd Cir. 1983) (tortious interference claim covered by forum selection clause).

The forum selection clauses in *American Patriot*, *Hugel* and *Penn L.L.C.* are admittedly broader in language than the one before the Court. *Am. Patriot*, 364 F.3d at 886 (the agreement "shall be exclusively governed and construed in accordance with the laws of Bermuda and any dispute concerning this Agreement shall be resolved exclusively by the courts of Bermuda); *Hugel*, 999 F.2d at 208 ("The courts of England shall have exclusive jurisdiction to settle any dispute and/or controversy of whatsoever nature arising out of or relating to the Member's membership of, and/or underwriting of insurance business at Lloyd's"); *Penn L.L.C.*, No. 03 C 5496, 2003 WL 22284207, at * 1 ("For any action or suit to enforce any right or remedy of this agreement, (except for actions to enter or collect on judgments) the parties consent to exclusive jurisdiction and venue in Clark County, Washington"). However, the breadth of these forum selection clauses at issue does not make these decisions inapposite here. The Seventh Circuit held in *American Patriot* that a dispute over a contract is governed by the forum selection clause regardless of whether it is framed as fraud

3

is independent of the language of the forum selection clause at issue. *Am. Patriot*, 364 F.3d at 889 ("Not only does the clause refer to disputes concerning the contractual relationship between the parties, however those disputes are characterized. More important, a dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance"). Also, although the clauses in *Penn L.L.C.* and *Hugel* are broad, their specific language does not cover the causes of action they are held to govern. Specifically, the forum selection clause in *Penn L.L.C.* by its language would exclude a claim for tortious interference, as tortious interference is not a "right or remedy" of the agreement. *Penn L.L.C.*, No. 03 C 5496, at * 1. Perhaps most notably, in *Hugel*, the court held that the forum selection clause governed an action regarding Lloyd's disclosure of the plaintiff's confidential information to an investigator. *Hugel*, 999 F.2d at 209. Although this action is not one for enforcement per se, it is one in which Miglin seeks to recoup her rights and intended gains under the contract, and the forum selection clause in the contract governing the relations between the parties governs. At the very least, it weighs very heavily in favor of transfer.

**Section 1404 Factors**

Mellon also argues that transfer is proper under the factors of 28 U.S.C. § 1404. Section 1404 states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. The District of Nevada qualifies as a district where this action may have been brought. A diversity action may be brought in a judicial district in which a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(a)(2). AMP, the corporation central to this case, is a Nevada Corporation, and relevant meetings took place in Nevada. Mellon

Aff. at 1-2. Here both elements counsel in favor of transfer to the District of Nevada.

**Convenience of the Parties and Witnesses**

In determining whether this case should be transferred for the convenience of the parties and witnesses, this Court should consider "the relative ease of access to sources of proof; availability of compulsory process for attendance of willing witnesses; possibility of view of premises if such would be appropriate; and all other practical problems that make trial of a case easy, expeditions, and inexpensive." *Petersen v. Union Pacific Railroad Co.*, 04 C 5918, 04 C 5949, 04 C 6032, 05 C 6263, 2006 WL 1049715, at *1 (N.D.Ill. April 19, 2006) *citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The weighing of these factors is committed to the discretion of this Court. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). However, this Court may not transfer a case for the convenience of one party's witnesses at the expense of the other party's witnesses. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). The plaintiff's choice of forum is rarely disturbed unless the balance is strongly in favor of the defendant. *Flexicorps v. Benjamin & Williams Debt Collection*, No. 06 C 3183, 2007 WL 1560212, at * 5, (N.D. Ill. May 29, 2007) *citing In re Nat'l Presto Indus., Inc.*, 374 F.3d 662, 664-65 (7th Cir. 2003).

Courts generally assume that a party will testify voluntarily at trial. *Petersen v. Union Pac. Railroad Co.*, 04 C 5918, 2006 WL 1049715, at *3 *citing FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F.Supp. 1307, 1311 (N.D.Ill. 1993). However, the convenience and availability of non-party witnesses is a signficant factor weighing in favor of transfer. *Petersen*, 04 C 5918, 2006 WL 1049715, at *3 *citing Dairy Indus. Supply Ass'n v. LaBuy*, 207 F.2d 554, 558 (7th Cir. 1953); *FUL*, 839 F.Supp. at 1312. In evaluating the availability of witnesses, this Court should consider not only the quantity of witnesses in each forum but also the nature and relevance of their testimony.

*Petersen*, 04 C 5918, 2006 WL 1049715, at *3, *citing FUL*, 839 F.Supp. at 1311; *Howell v. Joffe*, 478 F.Supp.2d 1014, 1023 (N.D.Ill. 2006).

Here, the District of Nevada is much more convenient for witnesses central to this case. Many witnesses in Nevada were involved in the business of AMP and aware of Miglin's involvement with AMP. First, AMP, likely a source of many witnesses in this matter, is located in Nevada. Mellon Affidavit at 1. Specifically, witness Jason Landess, who is located in Nevada, has knowledge of Mellon's discussions with Miglin prior to her investment in AMP, and Miglin's decision to invest in AMP. Mellon Aff. at 3. Specifically, Mellon asserts that Landess was involved in discussions with Miglin prior to her decision to invest. *Id.* Also notably, Landess is a signatory to the shareholder agreement central to this case. Shareholder Agreement at p. 5. Mellon asserts that Landess will not testify absent subpoena. Mellon Aff. at 3.

Other AMP shareholders are also present in Nevada, including another signatory to the Shareholder Agreement. Mellon Aff. at 4; Shareholder Agreement at p. 5. All of this testimony should be central to accurately deciding a case in which Miglin asserts her fraudulent inducement into buying the stock, and in addition to the this forum being inconvenient for these witnesses, the witnesses are outside of the subpoena power of this Court.

Miglin asserts that herself, her son, and various doctors involved in testing the viability of the spider vein treatment are present in Chicago. As noted earlier, this Court assumes that Miglin, a party, will testify voluntarily at trial. *Petersen*, No. 04 C 5918, 2006 WL 1049715, at *3 (N.D.Ill. April 19, 2006) *citing FUL Inc.*, 839 F.Supp. at 1311. In addition, absent any assertion to the contrary, this Court assumes that Miglin's son will also testify. Although Miglin names many doctors that were involved in testing, it appears that they would have knowledge at best tangentially

6

related to the issues in this case.  That is, it does not seem that these doctors would have any involvement in or knowledge of Miglin's purchase of shares in AMP or the alleged fraud.  Thus, Nevada is a more convenient forum and perhaps more importantly, one that provides compulsory process for the more important witnesses in this case.

### The Interests of Justice

The interests of justice component of § 1404(a) focuses on the efficient and fair administration of the courts rather than on the interests of the litigants themselves.  *Coffey*, 796 F.2d 217, 220 (7th Cir. 1986).   In making a determination under this component, this Court should consider the relative speed with which the case will go to trial, the familiarity of the judge with the applicable law, and the relationship of the parties and claims to the forum and access to sources of proof.  *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, No. 06, C 3183, 2007 WL 1560212, at *6 (N.D.Ill. May 29, 2007) *citing Heller*, 883 F.2d at 1293.  This factor also weighs in favor of transfer to Nevada.  Again, compulsory process would be available for many central witnesses in Nevada.  This Court does not have subpoena power over the witnesses in Nevada.  Thus, it could not require that the witnesses appear at trial.  This would result in a "trial by deposition" without major witnesses appearing to testify, which is greatly disfavored.  *Petersen*, No. 04 C 5918, 2006 WL 1049715, at *3 *citing  Bally Mfg. v. Kane*, 698 F.Supp. 734, 738 (N.D.Ill. 1988) ("because Rule 45 . . . allows the parties to conduct their discovery and deposition of non-party witnesses throughout the country, the Court's concern is that important non-party witnesses may be available to testify at trial . . . resulting in trial by deposition"); *see also FUL*, 839 F.Supp. at 1312 *citing Bally*, 698 F.Supp. at 738.

Also, although this Court does not purport to make a choice of law determination at this

point, it appears from the Share Purchase Agreement that this case may be governed by Nevada law, in which case a Nevada judge is likely to be particularly familiar with the law at issue.

**The Public Interest**

Courts also consider factors affecting the public interest in making decisions under forum non conveniens doctrine.  *See Clerides v. Boeing*, No. 07 C 4378, at *7, (7th Cir. July 16, 2008). Although Mellon does not motion specifically under forum non conveniens, due to the similarity of the issues at play, this Court will consider the public interest here.  The public interest factors to be considered include "the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Id. citing Gulf Oil*, 330 U.S. at 508-09.

The public interest factors here weight very slightly in favor of transfer.  The parties have not submitted any information regarding court congestion in Nevada.  However, as the Seventh Circuit noted, the median time to trial in the Northern District of Illinois is twenty-four months.  *Id.* at 10.  As such, it seems that this factor is at best neutral and potentially weighs in favor of transfer. Local  interests also weigh neutrally because Miglin is a Chicago resident, Mellon is a California resident, and AMP, which although is not a party is deeply involved in the case, is a resident of Nevada.  In addition, it appears that actions related to the dispute took place in both Nevada and Illinois.  Choice of law issues, however, weigh slightly in favor of transfer because, as noted earlier, it appears that this case may require the application of Nevada law.  Nevada courts are  likely more familiar with such law.

For the reasons stated above, Mellon's Motion to Transfer to the District of Nevada is granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: